ISAAC W. CARR AND FANNIE C. ESTES, TRADING UNDER THE NAME OF ISAAC W. CARR & COMPANY, PLAINTIFFS, DEFENDANTS IN ERROR, v. THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, DEFENDANT, PLAINTIFF IN ERROR.

Submitted December 6, 1909—Decided February 28, 1910.

1. In directing a verdict against a defendant upon the opening of his counsel, the trial court must give the statement of facts made by him the same force and effect as if duly testified to by witnesses, and the trial court should be satisfied, conceding all inferences which the jury might justifiably draw from the facts stated, that the evidence tendered is insufficient to warrant a verdict for the defendant, and nothing should be taken against the party making the statement without full consideration, and the inferences to be drawn should be as comprehensive as the statement will justify.

2. In an action for damages growing out of delay in delivery of freight by a common carrier, the defendant offered to show that the point to which certain carloads of freight were consigned was subject to special conditions regarding delivery, the circumstances being that the rail terminal of defendant's railroad was at Hoboken; that it maintained a yard for the benefit of a limited number of marketmen in Brooklyn; that the trackage in the yard was apportioned among the several dealers, and that the custom, known to all parties and acted upon by them, was to lighter the cars from Hoboken to Brooklyn, and place them upon the trackage apportioned to each of the dealers respectively, where they were allowed to unload the cars directly into the wagons of their customers; that the plaintiffs, being aware of this, ordered more cars of freight than the track allotted to them would hold, and owing to the

custom and practice of delivering to customers from the cars they could not, or did not, unload the cars as rapidly as they were floated from Hoboken to Brooklyn; that the trackage in the yard was kept constantly filled with cars lightered from Hoboken, and as fast as plaintiffs unloaded and released cars others were placed on the tracks for their use in the market; that owing to the delay of the plaintiffs in unloading, the cars could not be transferred from Hoboken to Brooklyn as rapidly as they arrived, and because of this some of the merchandise was depreciated in value. *Held,* that from this opening an inference might properly be drawn, that the goods were shipped, and accepted for shipment, upon an implied agreement that the cars were to be transferred from Hoboken to the market place in Brooklyn only as rapidly as the plaintiffs unloaded them and afforded the defendant an opportunity to place the cars consigned to plaintiffs upon the trackage allotted to them, and that to overrule the proffered defence was error.

On error to the Supreme Court.

For the plaintiff in error, *Max M. Stallman.*

For the defendants in error, *Frank W. Hastings, Jr.*

The opinion of the court was delivered by

BERGEN, J. Plaintiffs seek in this action to recover damages resulting from the alleged negligence of the defendant, a common carrier, in unreasonably delaying the transportation and delivery of freight. The amount due plaintiffs, if anything is recoverable, is not in dispute, and the single question at issue on the trial was the liability of the defendant. The ground of plaintiffs' action is, as set out in their declaration, that through the default and negligence of the defendant twenty-three cars of perishable merchandise of the plaintiffs, which the defendant accepted for transportation and delivery to plaintiffs at the foot of Clymer street, in the borough of Brooklyn, New York, were not delivered within a reasonable time, on account of which part of the goods decayed, causing the loss sued for. The plaintiffs' case on the precise question in dispute rests almost entirely upon a written stipulation, and a chart showing the arrival, delivery to plaintiffs and the dates when the cars were unloaded and released by the plaint-

iffs, from which it appears that defendant was operating a
railroad as a common carrier during the period when it is
alleged the unreasonable delays happened; that plaintiffs
shipped, from divers points along defendant's line of railroad,
a number of carloads of apples, potatoes, cabbage and other
produce of a perishable character, between the latter part of
October, 1904, and February, 1905, among them being the
twenty-three cars in controversy, which were consigned to
plaintiffs at the foot of Clymer street, Brooklyn; that the ter-
minal point of the railroad proper was at Hoboken, and de-
livery was made at Clymer street by lightering the cars to that
point from Hoboken; that at Clymer street the defendant had
provided a freight station and a yard with tracks accessible to
teams for unloading, which yard was used by the plaintiffs
and others as a market place, the contents of the cars being
directly unloaded into wagons as fast as sold by the different
consignees to their customers; that although the cars in ques-
tion were transported from the initial loading points to Hobo-
ken without unreasonable delay, they were not immediately
delivered at Clymer street, but were held at Hoboken for a
sufficient length of time to constitute, unexplained, an unrea-
sonable delay in delivery at Clymer street, during which period
the depreciation in value complained of occurred; that ac-
cording to the chart it appears that other cars consigned to
plaintiffs and delivered to them at Clymer street were not
promptly unloaded and released by plaintiffs, and that the
average number of cars in the yard at Clymer street, deliv-
ered to the plaintiffs and other consignees who were unload-
ing as the produce was sold to customers, was about forty-five
during the period to which the matters in controversy in this
suit relate, the whole number being distributed between
plaintiffs and the other consignees. The chart also shows that
from November 20th, 1904, until January 22d, 1905, the
plaintiffs had constantly in the yard at Clymer street from
eight to sixteen cars, the average being nearly, if not quite,
eleven cars.

At the close of the plaintiffs' case defendant's counsel, in
his opening, stated the character of the defence which it was

intended to prove to be as follows: That about eight years before this suit was instituted the defendant had established a station near the Wallabout produce market in Brooklyn; that the plaintiffs were one of a dozen or sixteen firms engaged in the produce business at that market; that in connection with its station the defendant had provided a small yard in which were eight or nine tracks holding in all about forty-five cars, which were accessible to teams; that defendant's railroad terminal is at Hoboken, New Jersey, and it was the custom or practice to lighter the cars containing produce from Hoboken to Brooklyn, where the cars were placed on the unloading tracks; that the contents of the cars were sold to purchasers direct from the cars, this practice being known as peddling; that each dealer was afforded a limited or proportionate amount of track space for such business; that in the fall of 1904 the plaintiffs, being familiar with the situation, had shipped to themselves over one hundred cars of produce, including those in this suit, from various points on the defendant's line and on connecting lines; that these cars began to arrive at Hoboken during the last days of October, 1904, at which time there were in the Brooklyn yard cars delivered to the plaintiffs which had not yet been unloaded, and other cars at Hoboken which had not yet been floated to Brooklyn; that during the ten days from October 26th to November 5th thirty-three cars arrived at Hoboken, and the defendant began to float them to Brooklyn, but the plaintiffs did not unload and release the cars in Brooklyn as fast as the cars were being floated to Brooklyn, with the result that on November 19th the plaintiffs had fourteen cars, about one-third of the yard's capacity, on tracks at Brooklyn awaiting unloading; that from October 31st to November 19th the defendant floated to Brooklyn thirty-two cars, and during the same period the plaintiffs unloaded and released an average of one car per day; that this condition continued until the latter part of January, during which period the defendant kept the plaintiffs supplied with from seven to thirteen cars ahead of their unloading, but that plaintiffs continued to dispose of only about a car per day on the average,

taking from three days to three weeks to unload a single car; that with possibly one or two exceptions all of the cars involved in this suit arrived at Hoboken prior to the 27th of November, but some of them were not and could not be floated to Brooklyn until the latter part of December, because the plaintiffs had on track at that station more cars than they could handle or dispose of, occupying exclusively from one-fourth to one-third of the trackage; that the plaintiffs knew, when they ordered the goods shipped, that the yard at Brooklyn would only hold forty-five cars, and that the defendant could not discriminate in favor of the plaintiffs and give them an absolute monopoly of these tracks. At the close of this opening the trial court overruled the defence proffered and directed a verdict for the plaintiffs. To this the defendant took an exception, which is the basis of the assignment of error upon which the defendant relies for a reversal of the judgment.

In directing a verdict against a defendant upon the opening of counsel, the trial court must give the statement of facts made by counsel the same force and effect as if they were duly testified to by witnesses, for the rule upon which such a proceeding is based is that if all the facts be assumed to be true, and were duly proven, they would constitute no defence, and the trial court should be satisfied, conceding all the inferences which the jury might justifiably draw from the facts stated, that the evidence tendered is insufficient to warrant a verdict for the defendant. *Pleasants* v. *Fant,* 89 *U. S.* 116, 120; *Oscanyan* v. *W. R. Arms Co.,* 103 *Id.* 539.

We think that the inferences which a jury would be warranted in drawing from the facts stated in the opening of defendant's counsel are that the defendant had established a special yard at Clymer street, Brooklyn, with trackage room for only forty-five cars, and that this trackage was apportioned among at least twelve persons, who were entitled to use the tracks apportioned to them, respectively, for market purposes, each party unloading as rapidly as they were able to dispose of their cargoes to customers, according to a custom established and acted upon by the several marketmen and

the defendant; that the proportion of trackage allotted to plaintiffs was one-twelfth of the whole at the utmost, or so much thereof as would hold four cars, and that when plaintiffs shipped their produce to Clymer street they knew that they would be entitled to use the trackage only to that extent, and also that in order to have prompt delivery from Hoboken of the large number of cars consigned to them by their order in the fall of 1904, it would be necessary to unload and release the cars more rapidly than, as it was proposed to show, they did; that the cars were delivered by defendant with greater frequency than they disposed of their contents by peddling to customers; that they occupied nearly one-third of the trackage, although their proportionate share was about one-twelfth, and that the delay which caused the injury was in the unloading, for the cars were delivered by the defendant and placed on the tracks at the market place much in advance of the capacity of the plaintiffs to handle them.

These were justifiable inferences which the plaintiffs might have met and destroyed with rebuttal testimony, but for the purpose of this case the facts from which they may be drawn stand without contradiction.

In disposing of a case on the opening of counsel nothing should be taken against the party making the statement without full consideration, for it is not a detailed statement of all the evidence, but ordinarily a summary of what is intended to be proven, and the inferences to be drawn should be as comprehensive as the statement will justify. The defence proposed was that a special condition had been created by the defendant, not for the general public, but for a small number of marketmen, under which they had the unusual privilege of retailing their shipments directly from the car to their customers, and it differs from the ordinary terminal or station where all persons may receive freight. The accommodations at the place were limited, and the plaintiffs knowing this, and that the use of the tracks was apportioned among at least twelve dealers, including the plaintiffs, consigned to this special point more cars than they could unload, according to the custom or method followed by them, in time to save depre-

ciation, and it is not an unfair inference that the same depreciation would have happened if there had been ample room, and all of the cars had been floated to Brooklyn as fast as they were delivered at Hoboken.

In our opinion the defence was improperly overruled, for if the special conditions, which the inferences warrant, existed, a jury might properly find that plaintiffs had knowledge of it and consigned their produce to Clymer street instead of Hoboken, the rail terminal of the defendant, upon an implied agreement that the cars were to be floated from Hoboken to Brooklyn only as rapidly as the plaintiffs could sell their contents and release the proportion of trackage in the market space assigned to them, which agreement was fulfilled by the defendant on its part. If such a custom prevailed, and was acted upon by both parties, then, in the absence of any specific agreement to the contrary, a presumption arises that shipments to Clymer street, rather than Hoboken, were made and accepted subject to the condition that after they had arrived at Hoboken, transit from that point to Clymer street would depend upon the action of the plaintiffs in permitting it to be done by removing obstacles which they created for their own profit or convenience. It may be that the plaintiffs overestimated the capacity of the market to promptly absorb their large shipments, and that they were disappointed in not being able to quickly dispose of the produce, but for this the defendant is not responsible.

The judgment below is reversed and a *venire de novo* awarded.

*For affirmance*—MINTURN, J.   1.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, BOGERT, VROOM, GRAY, DILL, CONGDON. JJ.   14.